# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-00418-PAB-MJW

FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for United Western Bank,

    Plaintiff,

v.

BANC OF AMERICA FUNDING CORPORATION, et al.,

    Defendants.

---

## ORDER CONCERNING JOINT PRODUCTION PROTOCOL FOR ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS ( Docket No. 120-1 )

---

    Plaintiff, the Federal Deposit Insurance Corporation in its capacity as Receiver for United Western Bank ("FDIC" or "Plaintiff"), and Defendants, Morgan Stanley Capital I Inc.; Morgan Stanley & Co LLC; Morgan Stanley; RBS Acceptance Inc.; RBS Securities, Inc.; and RBS Holdings USA Inc. ("Defendants"), HEREBY STIPULATE AND AGREE, by and though their undersigned counsel, that the following Joint Production Protocol for Electronically Stored Information and Paper Documents ("Protocol"), shall govern the production of documents, testimony, exhibits, electronically stored information ("ESI") and any other materials or information (including any abstract, any copies, summaries or derivations thereof) produced by the Parties during discovery in the above-captioned action (the "Action").

1

## I. Definitions and Instructions

1.      As used herein, the terms "Party" or "Parties" mean Plaintiff or Defendants or all of them, and the term "Third Party" means any person or entity that is served with a subpoena pursuant to Federal Rule of Civil Procedure 45. The provisions set forth herein shall govern document productions only by the Parties and their affiliates, though Third Parties are encouraged to adhere to them.

2.      Absent special circumstances, the Parties will comply with this Protocol in producing ESI or other documents in this Action, with the exception of loan origination files, loan servicing files or other sources where compliance may be unduly burdensome.[1]

3.      By agreeing to this Protocol, the Parties do not admit that any ESI or other documents produced under its terms are relevant or admissible in this Action or in any other litigation.

4.      The Parties will make reasonable efforts to ensure that all ESI they produce is decrypted, although media on which the Parties produce ESI may be encrypted for security purposes provided that appropriate password information is provided to all Parties to which such media are produced.

5.      The Parties will make reasonable efforts to ensure that all ESI and other material they produce is legible to the same extent as it is maintained in the ordinary course of business.

6.      Nothing in this Protocol shall be interpreted to require the disclosure of any ESI or other documents that a Party contends are protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection, nor shall this

---

[1]      "Loan origination files" refers to documents that are created or obtained during the formation of a loan, including in the course of originating, underwriting, approving, and funding the loan, including any supplemental materials received post-funding. "Loan servicing files" refers to documents that are created or obtained in the course of servicing a loan during the life of the loan, including any supplemental materials prepared or received by the servicer.

2

Protocol require the production of ESI or other documents that are not discoverable under applicable law.

7.     If ESI or other documents protected from disclosure under the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection are produced in this action, the disclosure is presumed to be inadvertent and not a waiver of the privilege or protection.  Upon discovering that privileged or protected ESI or other documents were disclosed, the Parties shall follow the clawback procedure set forth in the Stipulation and [Proposed] Order Governing the Treatment of Confidential and Highly Confidential Discovery Material ("Protective Order"), filed on or around June 11, 2015.

8.     The Parties agree to confer in good faith as to discovery of ESI and other documents as necessary.

9.     "Native File(s)" means ESI in the electronic format of the application in which such ESI is created, viewed, and/or modified in the ordinary course of business. Native Files are a subset of ESI.

10.     "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

11.     "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. In the absence of agreement between the Parties or between the Parties and a Third Party or order of the Court, a Static Image shall be provided in Tagged Image File Format

3

("TIFF," or ".TIF" files). If a TIFF or .TIF file cannot be created, then the Static Image shall be represented in the form of a placeholder TIFF image as provided for in ¶ 16(c). An image load/unitization file in a standard .opt or .log litigation support image load format shall be included that provides: (i) the document number for each image; (ii) the full path name(s) of each TIFF that represents an image; and (iii) the document boundaries for each document. The load file shall be in the order that appropriately corresponds with each image file. The following represents the format of a standard .opt or .log image load/unitization file: Bates, Volume, Path_to_image, Document Break, Folder Break, Box break, Total_Pages.

## II. Production of Hard-Copy Documents

12.     The Parties agree to produce hard-copy documents in black-and-white, single-page, 300 DPI Group IV TIFF image format named according to Bates number accompanied by document level optical character recognition ("OCR") text files. Documents shall be provided with Concordance-compatible image and data load files (*i.e.*, .OPT and .DAT files) using standard Concordance delimiters. The load file shall indicate document breaks, and the metadata file shall include at least the following fields: (1) Custodian (Name of custodian from whom the document was collected); (2) Doc Type (indicating scanned hard copy document); (3) Page Count; (4) Bates Begin (beginning production number); and (5) Bates End (ending production number).

13.     Absent special circumstances, the Parties will use reasonable efforts to scan hard-copy documents such that the images appear the same as the documents are kept in ordinary course of business. Reducing image size may be necessary to fit page size or display production numbers and confidentiality designations without obscuring text.

14.     A producing party may produce color hard-copy documents as black-and-white images. Where the original of a produced document is in color, and color is material to the

4

interpretation of the document, the receiving party may request that the document be produced in color, and the producing party shall make reasonable efforts to produce the document in color.

15. If any original hard-copy document has notes affixed thereto or attachments, the Parties will scan and produce copies of the original hard-copy documents, along with the notes or attachments affixed thereto, unless privileged, in the same manner as other documents. If the notes or attachments obscure any information on the original hard-copy document, the Parties will also produce copies of the original hard-copy documents without the notes or attachments affixed thereto in order to make the underlying information visible.

16. The Parties will make best efforts to identify the individual custodian (or if the individual custodian is not reasonably ascertainable, the custodial group) for hard-copy documents.

### III. Production of ESI

17. The Parties agree to produce ESI in black-and-white, single-page 300 DPI Group IV TIFF image format named according to Bates number with the exception of items listed in paragraphs (A)-(D) below. Additionally, the Parties agree to deliver extracted text corresponding to each imaged document. Absent special circumstances, the extracted text shall be delivered as separate document level text files. Absent special circumstances, if a document does not contain extractable text, the producing party shall provide OCR files for that document. In addition to the single page TIFF images and extracted text files, the Parties agree to provide load files linking the TIFFs with their associated text file and metadata such that the documents shall be loadable into document management software such as Concordance. Exceptions:

    A. Excel Files and Spreadsheets. Excel files and other similar spreadsheet files shall be produced in native format with a placeholder TIFF image. A file path to the native file shall be provided. The exception will be for redacted Excel

#87285717v6

files which will be produced in TIFF format as specified in this Paragraph but may also be produced in native format. Images for the redacted Excel files will display the content in the same manner as if such files were printed. The extractable metadata and text shall be produced in the same manner as other documents that originated in electronic form, unless such metadata contains privileged and protected information. If a native file is used at a deposition or hearing, or attached to a motion or other filing, it shall be provided together with its Bates-stamped placeholder TIFF image in order to facilitate tracking and authentication thereof.

B.      Image Not Readable. Where TIFF images of certain documents are not readable, the Parties may produce such documents in native format. To the extent the receiving party obtains through discovery a file or document that the party believes is not adequately represented in TIFF image format, the receiving party may request that file or document be produced in native format, the production of which shall not be withheld without good cause shown.

C.      Non-Convertible Files. Certain types of files such as system, program, video, and sound files, and files that can only be read using third-party proprietary software, may not be amenable to conversion into TIFF format. Examples of file types that are not conducive to conversion into TIFF image include but are not limited to: *.exp *.ilk *.res *.trg *.tlh *.idb *.pdb *.pch *.opt *.lib *.cab *.mov *.mp3 *.swf *.psp *.chi *.chm *.com *.dll *.exe *.hlp *.ivi *.ivt *.ix *.mis *.nls *.obj *.ocx *.rmi *.sys *.tmp *.ttf *.vbx *.wav *.wpg *.iso *.pdb

\*.eps \*.mpeg \*.mpg \*.ram \*.rm \*.pds \*.ai \*.aif \*.bin \*.hqx \*.snd \*. mpe \*.wmv \*.wma \*.xfd \*.db \*.bat \*.xnk \*.qtl \*.kob \*.mso \*.dat \*.m4a \*.bak \*.xll \*.blank \*.wdf \*.cdo \*.snp \*.rename \*.mdi \*.sda \*.ren \*.001 \*.crf \*.dft \*.eds \*.exl \*.dwg \*.fdf \*.pcl \*.wmf \*.wps \*.fpage \*.odttf \*.cas \*.ldl \*.wm \*.m4p \*.dcx \*.3g2 \*.sss \*.xyz. Such files will not be converted into TIFF format but will be represented in the form of a placeholder TIFF image. These files will be produced in a reasonably usable form by agreement of the Parties to the extent their contents can be determined to be responsive and subject to production.

D.    Previously Produced Documents. To the extent any documents or data that were previously produced in other litigations or in response to governmental or regulatory inquiries or investigations are discoverable in this Action, no Party shall be required to reformat such previously produced documents or data, and all documents or data produced in the same format as they were produced or collected in such other matters are deemed to be in compliance with this Protocol when produced in this Action, notwithstanding other provisions in this Protocol, so long as those documents and data are permitted for use in this Action. The producing party will in any event agree to re-Bates stamp the production and brand it as confidential pursuant to the Protective Order entered in this case.

18.    If a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text. For documents that contain redacted text, the parties may either apply the

7

redactions directly on the native file itself or produce TIFF image files with burned in redactions in lieu of a Native File and TIFF placeholder image.

19.     Attachments, enclosures, and/or exhibits to any parent document also shall be produced in proximity to the respective parent document containing the attachments, enclosures, and/or exhibits.

20.     The Parties agree that all ESI shall be produced with the following metadata or its equivalent to the extent reasonably available for a particular document:

| Field Name | Field Description |
|---|---|
| BegBates | Beginning Bates number |
| EndBates | Ending Bates number |
| BegAttach | Beginning Bates number of the first document in an attachment range |
| EndAttach | Ending Bates number of the last document in an attachment range |
| Source | Person, shared drive or other source from whom files were collected. |
| Confidentiality Designation | Confidential, highly confidential, or no designation for each document |
| Duplicate Custodian[2] | Name(s) of any custodian of any deduplicated version(s) of the document |
| FileName | Filename of the original file name of the file |
| OrigFilePath | Path and filename of the file in the ordinary course of business |
| DocExt | Native File extension |
| Subject | Subject line extracted from an email message |
| Title | Title field extracted from the metadata of a non-email document |
| Author | Author field extracted from the metadata of a non-email document |
| From | From field extracted from an email message |
| To | To field extracted from an email message |
| CC | CC field extracted from an email message |
| BCC | BCC field extracted from an email message |

---

[2]     Duplicate Custodian information may be provided by separate report.

8

| DateRcvd | Received date of an email message |
|---|---|
| TimeRcvd | Received time of an email message |
| DateSent | Sent date of an email message |
| TimeSent | Sent time of an email message |
| DateCreated | Date that a file was created |
| TimeCreated | Time that a file was created |
| DateLastMod | Date that a file was last modified |
| TimeLastMod | Time that a file was last modified |
| SHA-1 or MD5 | SHA-1 or MD5 value for the document |
| FileDescription | File type of the document |
| Native File Path | Path to native file as produced |
| Page Count | Number of TIFF pages produced |

21.     The Parties will cooperate, as appropriate, to facilitate the acquisition of appropriate licenses and technical information necessary to review Native Files. In the event that ESI is produced in a format that is not reasonably usable by the requesting party, the receiving party may request that the producing party produce such ESI in a different format, the production of which shall not unreasonably be withheld.

22.     To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each party may remove exact duplicate ESI (a "deduplicated version"), including without limitation across custodians, so long as the producing party produces searchable metadata in the "Source" field or in a "Duplicate Custodian" field for each produced document sufficient for the receiving party to identify all custodians of any de-duplicated versions of such document. The Parties shall use industry standard MD5 or SHA-1 hash algorithms to facilitate the de-duplication process. The Parties will not de-duplicate attachments to emails against loose files.

9

23.     When converting ESI from its native format into its production format, to the extent reasonably practicable: (i) all tracked changes shall be processed to make them visible if they existed when the file was collected; (ii) author comments shall be processed to be made visible if they existed when the file was collected; (iii) hidden columns and rows shall not be altered and shall be retained in the manner in which they existed when the file was collected; (iv) presenter notes shall be processed to make them visible if they existed when the file was collected; and (v) auto-populated fields, with the exception of auto-populating "page number" fields, may be replaced with text indicating the field name. For example, auto-populating "date" fields shall be replaced with the text "Date," and auto-populating "file path" fields shall be replaced with the text "Path" (or other similar text).

24.     The Parties agree to confer in good faith about any other technology or process that a producing party proposes to use to streamline the culling, review, and production of ESI (*e.g.*, email threading, near de-duplication, technology assisted review). The Parties shall make good faith efforts to resolve any objections to the use of such technology or processes before seeking relief from the Court.

25.     Nothing in this Protocol is meant to supersede, replace or substitute any of the provisions set forth in the Protective Order entered in this case. This Protocol is fully subject to the Protective Order. If there is a conflict between the provisions of this Protocol and the Protective Order entered by the Court, the Protective Order shall control.

26.     The Parties do not waive any objections to the production, discoverability, or confidentiality of ESI and hard-copy documents, including, without limitation, objections regarding the burden, overbreadth, or relevance of document requests related to ESI and hard-copy materials, or relating to the production of ESI or hard-copy documents in a form specified

in this Protocol. The Parties shall make their best efforts to comply with and resolve any

differences concerning compliance with this Protocol.

IT IS SO ORDERED:

Dated: June 12, 2015

_____
Hon. Michael J. Watanabe
United States Magistrate Judge


AGREED:

SHOEMAKER GHISELLI & SCHWARTZ          POLSINELLI, PC
LLC

By:                                     By:
/s/ Andrew R. Shoemaker                 /s/ James R. Miller
Andrew R. Shoemaker                     James R. Miller
Paul H. Schwartz                        Paul R. Wood
1811 Pearl Street                       Thomas H. Wagner
Boulder, CO 80302                       1515 Wynkoop St., Suite 600
Telephone: (303) 530-3452               Denver, CO 80202
ashoemaker@sgslitigation.com            Telephone: (303) 572-9300
                                        jmiller@polsinelli.com

*Of Counsel:*                           *Of Counsel:*
David J. Grais                          James P. Rouhandeh
Mark B. Holton                          Dana M. Seshens
Vickie Reznik                           Jeremy T. Adler
GRAIS & ELLSWORTH LLP                   DAVIS POLK & WARDWELL LLP
1211 Avenue of the Americas             450 Lexington Avenue
New York, New York 10036                New York, NY 10017
Telephone: (212) 755-0010               Telephone: (212) 450-4000
Facsimile: (212) 755-0052               dana.seshens@davispolk.com
dgrais@graisellsworth.com

*Attorneys for Plaintiff Federal Deposit*    *Attorneys for Defendants Morgan Stanley &*
*Insurance Corporation as Receiver for United*  *Co. LLC, Morgan Stanley, and Morgan*
*Western Bank*                                *Stanley Capital I Inc.*


                                        SHERMAN & HOWARD LLC

                                        By:
                                        /s/ Peter G. Koclanes
                                        Peter G. Koclanes
                                        633 17th Street, Suite 3000
                                        Denver, CO 80202
                                        Telephone: (303) 297-2900
                                        pkoclanes@shermanhoward.com

#87285717v6

*Of Counsel*:
Thomas C. Rice
Andrew T. Frankel
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2500
afrankel@stblaw.com

*Attorneys for Defendants RBS Acceptance
Inc., RBS Securities Inc., and RBS Holdings
USA Inc.*

12